# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| BOBBY RAY LONG, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> DR. MARCEL ROHANA, ) <br> ) <br> Defendant. ) | Case No. 1:12-cv-32-JMS-MJD |

## ENTRY DISCUSSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING FURTHER PROCEEDINGS

For the reasons explained in this Entry, the defendant's motion for summary judgment [dkt. 83] must be **granted in part and denied in part.**

### I. Background

The plaintiff in this civil rights action is Bobby Ray Long ("Long"), a former inmate at the Marion County Jail ("the Jail"). The sole remaining defendant is Dr. Marcel Rohana ("Dr. Rohana").[1]

Long alleges in his amended complaint that he was denied pain medication and back surgery while he was a pretrial detainee at the Jail.

Dr. Rohana seeks resolution of Long's claims through the entry of summary judgment. Long has opposed the motion for summary judgment.

---

[1] Other defendants were dismissed when the complaint was screened in the Entry of December 13, 2012 (dkt. 45), and on motion in the Entry of January 14, 2014 (dkt. 82).

## II. Standard of Review

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands C*orp., 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc*., 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## III. Discussion

### A. Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), and giving the non-moving party the benefit of all reasonable inferences from the evidence, the following facts are undisputed for purposes of the motion for summary judgment:

In 2006, Long fell off a ladder and injured his back. He initially received care for the injury at Indianapolis Community Hospital East, but he started going to the VA Hospital for care in 2010. His primary care physician at the VA Hospital prescribed a number of drugs, including Albuterol, Vicodin, Cyclobenzaprine, and Naproxen. In March 2011, his physician diagnosed degenerative disc change in the spine causing mild spinal stenosis at L5-S1 and L3-L4 and moderate spinal stenosis at T11/T12. In April or May of 2011, VA Hospital physicians recommended that Long undergo a lumbar laminectomy. The procedure was scheduled to occur on August 2, 2011, but was "bumped back" to August 17, 2011, because someone else's surgery was more urgent.

On August 4, 2011, Long was arrested and charged with battery and intimidation for his role in a bar fight that occurred on July 30, 2011. When Long was taken to the Indianapolis Arrest Processing Center, Kamiya Quarles ("Quarles") helped him fill out an intake questionnaire relating to his medical history. In response to questions regarding his prescriptions, Long told Quarles he was currently prescribed Vicodin, Naproxen, and Citalopram. (Dkt. 88, pg 57).

Long was next taken to the Indianapolis City County Building, where he signed a consent for treatment form, giving permission to provide him with care in the Jail. Long wrote "In with V.A. Hospital," on the form, which he intended to mean that he consented to medical treatment by jail medical staff "as long as it was in concert with the VA Hospital treatment." Long arrived at the Jail on August 5, 2011. A Medical Mental Receipt was completed which indicated that Long's alertness, affect, mood, speech, appearance, and activity were all appropriate. (Dkt. 88, p. 58-60). A Medical Physical Receipt indicated "medication at VA," that Long used a cane, had dental issues, leg swelling, neuropathy, sciatic nerve issues, and abdominal pain, and he had back and joint pain from falling off a house in 2006. (Dkt. 88, pp. 61-64). That document also indicated that

Long did not have an acute medical problem, that a follow-up with a physician was not necessary, that he would not be referred to chronic care, and that a lower bed was necessary.[2]

Defendant Dr. Rohana is a physician employed by Correct Care Solutions, LLC ("CCS"). CCS contracts with the Jail to provide medical care for pretrial detainees on-site. As part of its accreditation, CCS requires that every detainee who does not have an acute condition be seen by a physician within fourteen days of being held at the Jail. In any given day, 100 new pretrial detainees may be booked into the Jail. Many of those detainees may be released within the first two weeks. As a result, the policy is aimed at assuring that every pretrial detainee, whether or not he or she has an acute condition, is seen by a physician if his or her confinement will extend beyond fourteen days.

Pursuant to Jail policy, Long was placed on a track to be seen and evaluated by Dr. Rohana within two weeks of being booked into the Jail. Once at the Jail, to accommodate his back condition, Long was allowed to keep his cane, given a lower bunk, and assigned to the medical cell block. When he was arrested, Long was carrying an Albuterol inhaler for his bronchitis. Medical staff confirmed the Albuterol prescription with the VA Hospital and noted it on a physician's order. On August 8, 2011, Dr. Rohana reviewed and signed the physician's order for Albuterol, thereby allowing Long to receive that medicine.

---

[2] The defendant cites to Exhibit 3 for the following assertions, however, Ex. 3 does not appear to be part of the record (dkt. 88): "As part of the intake process, a medical history screening report was prepared, indicating that Long had no pre-booking injury, that he did not have any acute conditions, that he had not been referred by a physician, and that he was not to be referred to sick call. There was no reference on the screening report to his scheduled surgery, or the prescriptions he had at the VA Hospital." The Court has not relied on these assertions in ruling on the summary judgment motion.

Dr. Rohana performed rounds at the Jail Mondays through Fridays.[3] The rounds took approximately 15 minutes on the medical cell block where Long was housed, which was comprised of 20 different cells, with two persons to each cell. Dr. Rohana spent no more than one minute at each cell. Given the limitation of time and the need to move quickly for security reasons, Dr. Rohana did not provide in-depth personal care to the inmates during his rounds. Instead, the rounds served as an opportunity to briefly check in with the detainees on those cell blocks to assure that there are no medical emergencies that require his immediate attention.

Long spent the first day of his confinement sleeping. The next day, Dr. Rohana spoke to a detainee on the bunk above Long, but did not address Long. On the third day, August 8, Dr. Rohana asked Long if he was okay. Long got up off his bunk, walked to the cell door, and told Dr. Rohana "I haven't got none of my pain medications from VA Hospital. I'm due for back surgery at VA Hospital [on] the 17th." (Dkt. 88, p. 19). Dr. Rohana responded that he would "look into it." *Id.* Long made similar comments to Dr. Rohana during some subsequent rounds, but on other days, Long slept and just "ignored" Dr. Rohana. (Dkt. 88, p. 51).

While at the Jail, Long was able to walk 45-50 feet to pick up his meal trays and then return to his cell. He also played cards and chess, but he experienced severe back pain as a result of not having his pain medication. At one point, Long's family mailed his Vicodin and Flexeril to the Jail, but Jail staff returned it to the family.

Dr. Rohana never entered Long's cell or gave him a physical during his rounds. He also did not have access to Long's medical records from the VA Hospital until after he had Long sign a release form on August 19, 2011. When detainees at the Jail have a medical issue, they may fill

---

[3] The Director of Nursing at the Jail testified in an affidavit that Dr. Rohana makes rounds on Mondays, Wednesdays, and Fridays, but because Long stated in his deposition that Dr. Rohana made rounds Mondays through Fridays, that is the fact that is presumed as true for purposes of summary judgment.

out a health service request to be seen by the medical staff during sick call. During Long's confinement at the Jail, he submitted health service requests dated August 21, 2011, reporting a bad toothache, and August 29, 2011, reporting complaints of constipation due to medications. He did not submit any requests complaining of back pain or notifying medical staff of a scheduled surgery because he believed that after telling Dr. Rohana about his medical condition, Dr. Rohana would handle it.

On August 15, 2011, Long met with Cindy Vandiver ("Vandiver"), a registered nurse. A "Medical History and Physical Assessment" prepared by Vandiver indicated that Long had an abnormal spine and had a history of arthritis, joint problems, and oral pain, but it gave no indication that Long was suffering specifically from pain in his back or that he had an active pain medication prescription from the VA Hospital. (Dkt. 88, p 71). Vandiver's medical history was reviewed by Dr. Rohana the following day, August 16.

On August 17, 2011, the day Long was scheduled to have surgery at the VA Hospital, he submitted a grievance demanding $1.5 million in damages against Jail officials for failing to transport him to the VA Hospital. Long wrote:

> Issue – I've been denied medical treatment in violation of my right to 'due process' under the 14th Amendment to the United States Constitution. A matter of deliberate indifference
> Facts – On this day – 8/17/2011, I was to have spinal surgery at V.A. Hospital, West 10th Street, Indpls., In at 7:30 am. Since my arrest and pre-trial confinement from 8/4/2011 to 8/17/2011 all law enforcement officials and Marion County Jail Medical Staff, connected to my case, have been made aware of my serious medical condition and that I was to have surgery on 8/17/2011. On 8/17/2011 I was not transported to V.A. Hospital by Marion County Sheriff, or his agents, to have spinal surgery and since 8/4/2011 I have been denied any pain medication to relieve my constant pain. Now I must have surgery rescheduled and live in serious pain.
> Relief Sought – That I be paid 1.5 million dollars in damages, and that Marion County Jail Officials, including Jail Doctors, refrain from denying me further medical treatment.

This was the only grievance that Long submitted with regard to his surgery date and back pain.

Within fourteen days of Long's arrival at the Jail, on August 19, 2011, Dr. Rohana met with Long in his medical office. Long was able to walk to the meeting without difficulty, and he was able to bend down and touch his toes after Dr. Rohana asked him to do so. Long told Dr. Rohana about his medical history, including when he began experiencing his back pain years earlier, that he had been receiving treatment at the VA Hospital since at least 2010, that an MRI had taken in April 2011, and that his August 2 surgery had been cancelled. During the meeting, Dr. Rohana told Long that he would request his medical records from the VA Hospital. Dr. Rohana also prescribed 500 milligrams of Naproxen to stop inflammation and decrease any pain. The prescription amount for Naproxen matched what Long had been prescribed by the VA Hospital.

After meeting with Dr. Rohana, Long filled out a medical authorization form requesting the medical records from the VA. The VA records were received on August 22, and Dr. Rohana reviewed them shortly thereafter. Long continued on a regimen of Naproxen during the remainder of his stay at the Jail. In addition, Dr. Rohana prescribed Elavil.

After 55 days, Long was released from the Jail on September 27, 2011, when he pled guilty to the battery charge. He went to the VA Hospital for care in the middle of October 2011. His back surgery was scheduled for January 12, 2012. Because Long failed to comply with the VA physician's orders to stop taking Naproxen, which is a blood thinner, the surgery was moved again. Ultimately, the L4/L5 laminectomy was performed on January 31, 2012, at the VA Hospital.

### B. Analysis

Long's claims arise out of the Fourteenth Amendment's due process clause because he was a pretrial detainee at all relevant times, but Eighth Amendment "deliberate indifference" standards are applied nonetheless. *Budd v. Motley,* 711 F.3d 840, 842 (7th Cir. 2013); *Rice ex rel. Rice v.*

*Correctional Medical Services,* 675 F.3d 650, 664 (7th Cir. 2012). A pretrial detainee alleging a constitutional violation "for denial of medical care must meet both an objective and a subjective component." *Pittman ex rel. Hamilton v. County of Madison, Ill.,* 746 F.3d 766, 775 (7th Cir. 2014). The first component is that the plaintiff's medical condition was objectively serious. *Id.* The defendant concedes that Long's back condition constituted a serious medical need.

The second component is that the defendant had a "sufficiently culpable state of mind-that [his] acts or omissions [were] sufficiently harmful to evidence deliberate indifference to [plaintiff's] serious medical needs." *Id.* (internal quotation omitted). An official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and the official must also draw the inference. *Id.* (internal quotations omitted).

Long's first claim is that Dr. Rohana was deliberately indifferent by failing to ensure that Long was taken to the VA Hospital on August 17, 2011, for his lumbar laminectomy. Long arrived at the Jail on August 5, 2011. According to Long, on or about August 8, 2011, Long spoke briefly to Dr. Rohana from inside his cell during rounds. Long told Dr. Rohana that he had not received his pain medications and he was scheduled for back surgery on August 17, 2011. Dr. Rohana said he would look into it. No medical records at the Jail indicated that Long was scheduled for surgery. It is undisputed that Long did not submit any written health requests notifying Jail medical staff that he had a scheduled surgery until he filed the grievance the day the surgery was scheduled.

Dr. Rohana points out that federal regulations would have prevented the VA Hospital from performing the surgery while Long was in the care of the Jail. *See* 38 U.S.C. §1710(h) ("Nothing in this section requires the Secretary to furnish care to a veteran to whom another agency of Federal, State, or local government has a duty under law to provide care in an institution of such government."). Absent a showing that Dr. Rohana was aware of this barrier at the time Long was

confined at the Jail, this legal point is irrelevant with respect to whether Dr. Rohana was subjectively aware of the surgery. It does, however, show that Long was not eligible to have the surgery at the VA Hospital as scheduled as a result of being in Jail. Therefore, even if Dr. Rohana was aware of the scheduled surgery before August 17, nothing he could have done would have made Long eligible to have the surgery performed at the VA Hospital as scheduled and Long suffered no harm as a result of any delay allegedly caused by Dr. Rohana.

In addition, it is significant that each time Long's surgery was scheduled at the VA Hospital, it was scheduled approximately three months or more in the future. In April of 2011, the laminectomy was scheduled in August of 2011. In October of 2011, it was not scheduled again until January of 2012. When Long forgot to refrain from taking Naproxen before surgery on January 12, 2012, it was rescheduled more than two weeks later, January 31, 2012. Long's laminectomy was not treated as an emergency procedure.

Under these circumstances, Long's claim of deliberate indifference with respect to the scheduled surgery fails because he has not shown that Dr. Rohana was deliberately indifferent to a "substantial risk of serious harm" when he did not arrange to have Long transferred to the VA Hospital on August 17, 2011.

Long's second claim is that Dr. Rohana was deliberately indifferent by failing to prescribe pain medication, causing him to experience severe pain from August 4, 2011, until August 17, 2011. This claim cannot be resolved as a matter of law. The unrefuted evidence is that Long reported directly to Dr. Rohana on more than one occasion that he needed pain medication for his back condition, a condition that also warranted surgery. The record lacks any testimony on the part of Dr. Rohana as to his thinking in response to Long's complaints or whether any medical judgment was exercised. In Dr. Rohana's brief, he argues that "Long has not deposed Dr. Rohana

and has failed to identify any evidence that would show the inner workings of Dr. Rohana's mind." It is Dr. Rohana who seeks summary judgment, however, and all Long has to do is submit sufficient evidence to create a genuine issue of fact. By stating under oath what he told Dr. Rohana, and given the lack of testimony from Dr. Rohana, Long has done his part. The Court cannot fill in the gaps as to what Dr. Rohana thought or believed or did after he said he "would look into it." Did he make any assessment of Long's pain and if so, how? What additional information did he need? Did he simply forget? Did he choose to ignore Long's complaints? There is no evidence on which the Court can discern whether Dr. Rohana failed to act out of negligence, deliberate indifference, or something else.

Dr. Rohana contends that Long telling him that Long was in severe pain was not sufficient on its own to establish deliberate indifference. Dr. Rohana argues that there was no "physical evidence of pain," but what evidence could that be? Pain is subjective and not capable of objective measurement. Even if Long did not cry out every time he moved, he is not required to do so in order to obtain treatment once he tells the Jail physician that he is in severe pain due to a longstanding medical condition. Indeed, Dr. Rohana prescribed Naproxyn at the time he saw Long in his office based on Long's subjective complaints, before he reviewed any additional VA records. A reasonable jury could find that it was unreasonable for Dr. Rohana to not prescribe pain medication in response to Long's complaints.

Dr. Rohana further argues that no Jail records put him on notice that Long required pain medication. This is not true. The intake questionnaire completed on August 4, 2011, indicates that Long had current prescriptions for Vicodin, Naproxen, and Citalopram. (For some unknown reason, these medications were not confirmed with the VA Hospital in the manner the Albuterol was confirmed). The Medical Physical Receipt notes "medication at VA." There is no evidence as

to whether or not Dr. Rohana reviewed or should have reviewed these documents. The nurse's medical history and physical assessment that was reviewed on August 16, 2011, indicated that Long suffered arthritis, joint problems, and oral pain. There was no box to check specifically with respect to "back pain," but it did reflect that Long was in pain. It is also true that Long did not submit written health requests for pain medication, which he could have done if he felt his complaints were not being heard, but Long lodged his complaints verbally and directly with the physician.

The Court cannot find as a matter of law based on this record that Dr. Rohana was not deliberately indifferent to Long's severe back pain. Long's affidavit and deposition testimony are sufficient to create a genuine issue of fact as to whether Dr. Rohana was deliberately indifferent to Long's need for pain medication from the time he first told Dr. Rohana, August 8, 2011, until August 19, 2011, when Dr. Rohana prescribed Naproxyn.

### IV. Conclusion

For the reasons set forth above, Dr. Rohana's motion for summary judgment [dkt. 83] is **granted as to the claim** that Dr. Rohana was deliberately indifferent to his request for transfer to the VA Hospital for surgery scheduled on August 17, 2011. The motion for summary judgment [dkt. 83] is **denied** with respect to Dr. Rohana's failure to provide pain medication for 11 days while Long was confined at the Jail. This remaining claim shall proceed to trial.

Based on a new case filed by Mr. Long in No. 1:14-cv-01353-SEB-DKL, the clerk shall **update the docket** to add the address 1405 N. Colorado Street, Indianapolis, IN 46201 as a second address for Mr. Long. Mr. Long must confirm his current address **not later than September 12, 2014,** and is admonished to report any future changes of address within seven days of the change.

## V. Further Proceedings

The Magistrate Judge is requested to schedule a status conference to revisit the issue of settlement and if that is not feasible, then to direct preparations for trial.

**IT IS SO ORDERED.**

Date: September 2, 2014

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**NOTE TO CLERK:** **PROCESSING THIS DOCUMENT REQUIRES ACTIONS IN ADDITION TO DOCKETING AND DISTRIBUTION.**

Distribution:

BOBBY RAY LONG
842 North Dequincy Street
Indianapolis, IN 46201

Bobby Ray Long
1405 N. Colorado Street
Indianapolis, IN 46201

Electronically registered counsel

Magistrate Judge Mark Dinsmore